**157]** *\*John Sloane v. David McConahy.*

Bond to the commissioners of the county, no commissioners being elected when the bond is made, covenanting to lay down water-pipes to convey water to a town, and for securing the use of such water to the inhabitants of the town, can not be considered as a grant of the use of the land in which the pipes are laid.

THIS case was adjourned here for decision from the county of Wayne. It was an action of trespass, and stood upon a case agreed.

The defendant entered upon the premises, by order of the corporation of the town of Wooster, to repair certain conduits laid through the lands of the plaintiff. The facts agreed are as follows: On May 13, 1811, John Beaver, William Henry, and Joseph H. Larwell, proprietors of the town of Wooster, in the county of Wayne, executed a bond to the commissioners of said county that thereafter might be appointed or elected, and their successors, in the penal sum of seven thousand dollars, with a condition "that if the above-bound obligors, or either of them, their heirs, executors, or administrators, do well and truly perform, execute, and erect the following labors, conveyances, buildings, etc., as hereinafter specified, to wit: erect a court-house, etc. And further, said obligors do bind themselves as aforesaid to bring the water of the run, which at present runs through the town from the north, in pipes of sound white-oak timber, well bored and laid, and raise the water therefrom, on the center of the diamond of said town, at least ten feet above the surface thereof, and that the same shall forever remain free and clear of all incumbrances for the use, benefit, and convenience of the inhabitants of said town, and they

have the privilege of conducting the same from thence in pipes, and raised in pump stocks, to any other part, etc., of said town," etc.   On April 6, 1812, commissioners of Wayne county were elected.   Joseph H. Larwell, one of the above proprietors of the town, held, on April 6, 1812, an equitable title to part of the land upon which the trespass is alleged to have been committed, and on May 10, 1813, acquired a legal title, and conveyed to Sloane by deed dated July 3, 1820.   The other part of the premises were conveyed by William Henry and Joseph H. Larwell to John Beaver, and by Beaver to the plaintiff.   Neither of these deeds contains any reservation whatever, except the one from Larwell and Henry to Beaver, which reserves from use and cultivation two rods on each side of the spring branch, from *the north side   [158 of the quarter section to the place where the water had been taken out for the use of the town of Wooster.   Through both tracts the conduits were sunk under ground by the obligors in 1814.   Sloane has never been an inhabitant of the town of Wooster, and both the tracts lie without the town plat and corporate limits.   Wooster was incorporated in 1824, and in 1827 an order was made by the common council, directing the defendant to contract for and superintend the repairs of said conduits.   By virtue of this order the defendant entered into the land, which is the trespass charged in the declaration.   If the court are of opinion that, under these circumstances, the plaintiff is entitled to recover, judgment is to be entered for the plaintiff with five dollars damages; if otherwise, a general judgment for the defendant.

J. C. WRIGHT, for plaintiff:

The right of the plaintiff to recover, in this case, is admitted, unless the facts in the defendant's notice, and in the agreed case, justify the trespass complained of.

The defendants rely on a bond executed by Beaver, Henry, and Larwell, May 13, 1811, in the penal sum of seven thousand dollars, in which they became bound to the "commissioners that hereafter may be elected or appointed for the county of Wayne," etc., conditioned among other things (the seat of justice being permanently fixed in the town of Wooster), that "said obligors do bind themselves as aforesaid to bring the water of the run, which at present runs through the town from the north, in pipes of sound white-oak timber of a proper size, well bored and laid, and raise the water

Sloane v. McConahy.

therefrom, on the center of the diamond of said town, at least ten feet above the surface thereat, and that the same shall forever remain free and clear of all incumbrances, for the use, convenience, and benefit of the inhabitants of said town, and that they have the privilege of conducting the same from thence in pipes, and raised in pump stocks, to any other part or parts of the town aforesaid, as may be deemed necessary and proper for their convenience, to be regulated by a majority of said town." They there also obligate themselves to convey certain lots, etc., for an academy 159] and house of *public worship. That the said bond was delivered to Wright, one of the commissioners to fix the seat of justice in said county, for the use of those interested, etc. That the town of Wooster was incorporated in February, 1824, and the trespass complained of, were acts (laying down pipes, etc.), done in pursuance of a resolution of the corporation of July, 1827. In appears, also, that when this bond was dated, Larwell owned the equitable interest in a quarter section, including the land of the plaintiff, and obtained the legal estate by patent, from the United States, in May, 1813. While Larwell held the fee in 1814, pipes were laid through the land now held by plaintiff, beneath the surface of the ground. Larwell conveyed two-thirds to Henry and Beaver, and afterward Henry and Larwell, July 13, 1813, conveyed the part now owned by plaintiff to Beaver, and Beaver to Sloane, on December 27, 1815, without any exception of said water right, Sloane then living in Stark county, where he resided at the date of the bond. In the deed from Larwell and Henry to Beaver, there is a reservation from all use and cultivation of two rods on each side of the spring branch, " to the place where the water had been taken out." In the other deeds there is no reservation whatever; and the reservation above is not on the land of the plaintiff, where the trespass was committed. The said premises held by plaintiff are not within the limits of the corporation of Wooster.

The county of Wayne was designated, as to its boundaries, in the act of February 13, 1808. Vol. vi. 155. Commissioners were appointed to fix the seat of justice January 22, 1811. Vol. ix. 92. Their duties were "to examine and select the most proper place as the seat of justice, as near the center of the county as possible, paying regard to the situation, extent of population, and quality of land, together with the general convenience and interest of the

Sloane *v.* McConahy.

inhabitants." Vol. viii. 463. The county was organized March 1, 1812. Vol. x. 17. The bond was taken possession of by the county commissioners, and recorded in the proceedings of the commissioners, and nowhere else.

1. Is this paper, purporting to be a bond, *valid*, and, if so, who are bound, and who authorized to enforce it as obligees? I contend that to constitute a *valid* bond, there must be parties, obligors of ability to enter into it, and obligees capable of *re- [160 ceiving. Who is the obligee in this bond? No natural person, nor any legal person. The commissioners hereafter to be elected or appointed for the county of Wayne, is not a designation of any natural persons certainly. As to the county of Wayne, it was not then in being, nor until the 1st of March thereafter, ten months. The first commissioners were not to be elected until April, 1812, eleven months after the date of the bond. It is then a nullity. But suppose the objections as to parties were removed. Who are capable of availing themselves of the obligation, and what is its nature? The bond declares the obligation to be for the use of the county of Wayne, to be discharged on the bringing the water to the center, elevating it there ten feet, there to remain free forever. This, if valid, is a personal covenant of the obligors to and for the county. It is not subject to the control or action of the town. The right of the town only commences when the water is brought to the center, and maintained there at the proper elevation. The inhabitants have the right to the free use of the water at the center, and the privilege of conducting the same from thence in pipes; the manner to be regulated by a majority of said town. The obligors bind themselves to the county to keep the water at the center, and then the right of the inhabitants attaches. The covenant purports to grant nothing, but to forfeit the penalty for non-performance; no right under it is vested in the town; it can not enforce it, nor sue or provide penalties for interrupting it before the water is within the town, and free for the use of the inhabitants.

2. It is claimed for the defendant that it is an appropriation of lands for the public use, of which the plaintiff is bound to take notice, and by which he is bound. Is this so? The fourth section of the eighth article of the constitution secures the inviolability of private property, except taken for public use, where a compensation is made to the owner. I know of but two ways in

which, in Ohio, lands may be appropriated to public use. One by the act of the owner, either by express grant, or by implication, the party owning and showing his intention to appropriate; the other by legislative enactment, and the strict pursuit of the provisions of such enactments. Of the first class are the streets, alleys, and public grounds in a town. By the act of recording 161] *town plats, vol. xxii. 301, maps, or plats of towns, before any lots are offered for sale, are required to be recorded, and "shall particularly set forth and describe all the public ground within such town, by its boundaries, corners, and extent; and whether it be intended for streets, alleys, commons, or other public uses," etc.; and all the lots shall be numbered, and their precise length and width stated, " and the map so made and acknowledged (as deeds are) and recorded, shall be deemed a sufficient conveyance to vest the fee," of the lands expressed or intended for public uses, in the county in which the town lies, in trust for the uses intended, and for no other use whatever. Of the second class are lands taken, the usufruct to the public, for roads, where the proceedings are on public notice, on petition, and the order of the commissioners, affording the owner an opportunity to claim his damages, etc. It can not surely be pretended that this bond, and the proceedings under it, comply with the provisions of either of these laws, and I am not able to see how this is to be sustained as an appropriation for public uses. The case of the Town of Pawlet *v.* Clark et al., 9 Cranch, 292, has heretofore been relied on for the defendant. I do not see the application of this case. The Supreme Court there determine (p. 325), " that a donation to the church of England is not good, for no such corporation exists in legal contemplation." This does not sustain the defense; if it bear on the case, it negatives the idea of an appropriation. In page 331, they recognize the principles of the civil law in regard to donations for pious uses, and that a donation by the town to a non-existing parish church would, therefore, at common law, take effect, as a dedication to pious uses, which it would be incompetent for the town to resume, and the fee, contrary to the general principle of the common law, would be in abeyance to take effect as a grant where the parish church was established, to which the crown would be deemed the patron. The origin of these grants for pious uses, and the reasons inducing courts to construe such grants, without a grantee, as renunciations by the crown, which it

Sloane *v.* McConahy.

·could not resume, it is not my purpose to examine. But it is re-markable that in the very case where they determined as above, the court recognized the act of the State of Vermont, which, by the revolution, had succeeded to the rights of the crown *as [162 conveying a legal estate in these glebe lands to the town in which they were situated, although it said the crown could not resume such donation, and the title was in abeyance. In that case, how-·ever, there was a grant from the king before the revolution, and from the State of Vermont after. The two cases have no analogy, unless it be insisted for the defense that Larwell & Co., as pro-prietors of the town of Wooster, were invested with legal power in reference to the subject of the grant. The case of Gwynn and wife *v.* City of Cincinnati, 3 Ohio, 25, has also been adverted to as supporting the claim of the defendant. In that case a deed had been made, by the husband by a former marriage, in his lifetime, for ground for widening a street, and by agreement with the city ·council for opening a street subject to the same public regulations as the grounds originally laid out in streets ; but the spot on ·which a market-house was erected in the tract had been omitted in the deed, and dower was claimed in it. The court held that in-·asmuch as the use for which the property had been set apart by the owner was inconsistent with the exercise of any private right, the dower was suspended or abrogated during the continu-ance of the use, and very properly put the case on the footing of originally designated streets, etc., on town plats recorded. It will be remarked that here was an express description of the ap-propriation by the owner, as in the making a town plat, and in neither does the law require the wife to unite.

3. Will it be urged for the defendant that the bond in question is a *grant?* It has none of the requisites of a deed, as known to ·our laws. There is no grantee, no consideration expressed, 3 .Johns. 484; no *acknowledgment,* nor any requisite of the ordinance of Congress, or the acts of the Ohio legislature. Neither the county, the county commissioners, or the town, were incorporated, and no one named capable of taking any grant. The case of Cooper *v.* Cory, 8 Johns. 385, was ejectment. The plaintiff hav-ing. shown title, the defendant exhibited a *deed* from plaintiff to .*the people of the county of Otsego* for the premises, and a deed from the *supervisor of the county,* made under an act of the legislature .of New York, authorizing the supervisors to *sell* the court-house

and jail, and the lot on which they stood (the one in question). It was held that the people of the *county had not capacity to take any grant, not being a corporate body known to the law. See also 2 Johns. Cases, 324. In the case of Lynch v. Hartwell, 8 Johns. 422, the supervisors (who, in New York, perform the duties of our county commissioners) having agreed upon certain lots for a court-house, etc., in the town of Rome, for Oneida county, in order to promote the settlement and embellishment of the village, and in consideration of one dollar, took a grant for certain lots for said house, etc., to be held by them and their successors forever, in trust, to erect a court-house, etc., thereon, and to permit part of the premises (described) to be appropriated for a church and school-house, under the direction of a *majority of the freeholders* of Rome, for the use of the inhabitants, etc. The court held that, admitting the first part of the grant for the use of the county good, the other for the *use of the inhabitants of Rome was* bad, because the supervisors being a corporation for limited purposes, were incapable to take in trust for the use of an individual, or others foreign to the *purpose of their institution*, and the grant was "*deemed void upon every principle*." It can not, I conceive, be successfully contended, that the commissioners appointed to fix seats of justice in Ohio are a corporation for any purpose whatever, nor that our county commissioners are a body corporate, for any more general purpose than the supervisors in New York. The duties of our commissioners may be found in vol. xxii. 266. Their powers are *enumerated* in the act of assembly, and that of taking in trust for any other purpose is not mentioned or conferred. The case of Hornbeck v. Westbrook, 9 Johns. 73, is also in point. A tract of land had been conveyed to the plaintiff, with a reservation proviso, that the inhabitants of Rochester should be allowed to cut and carry away wood from any part of the land not in fence. The defendant, an inhabitant, was sued in trespass, for cutting and carrying away wood, and relied on the proviso in the deed as a justification. It was adjudged that the proviso in the deed was void—the inhabitants of a town, not incorporated, were incapable to take an estate in fee, and a grant to them would have been void for uncertainty; and if incapable to take by that name, a reservation to *them*, in a deed to a *third* person, was void. The court lay it down, as acknowledged law, that a person, not a party *to a deed, can not take anything by it, unless by

way of remainder; and that a grantor can not covenant with a stranger to a deed. Carthew, 76; 8 Coke, 69.

The same question came again under the consideration of the Supreme Court, in New York, on the same proviso, in Hornbeck v. Sleght, 12 Johns. 199. This was also trespass for cutting wood, etc., and the proviso is set out in *hæc verba*, as follows: "Provided always, that the inhabitants of the said town of Rochester may have allowed sufficient roads, and outways, over the said tract of land, and to take, cut, and carry away wood and stone from off any part of said land which shall not be in fence." The court confirmed the case of Hornbeck v. Westbrook above, and again declare the reservation void. "Nor would it be valid (say they), as a covenant to stand seized. The inhabitants of Rochester were strangers to the deed. The present inhabitants, at all events, must be so considered. For they, not being a body corporate, so as to perpetuate the rights granted by the patent, these rights must be restricted to the then inhabitants." This "deed, and all its provisos and reservations, must receive the same construction, and be governed by the same rules, as the deeds of other individuals." Upon these authorities, and upon principle, I suppose it clear the paper relied upon is no grant. It has no requisite of a deed known to our laws. I can not better close this point in the case, than by adverting to the decision of the Supreme Court of the United States, in the case of McCormick v. Sullivant, 10 Wheat. 202. In that case, Judge Washington, in giving the opinion of the court, says: "It is an acknowledged principle of law, that the title and disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one to another." The judge cites, as sufficient for his position, 7 Cranch, 115; 9 Wheat. 565.

4. This bond can not be viewed as a covenant to stand seized, or as running with the land. At the date of the writing, the obligors were not seized of the land, and could not so covenant. If they had been so seized, we have seen, in the cases cited, that to such a covenant there must be a party to the instrument, capable of taking—such a covenant would be void, if made in favor of a stranger. In the case *at bar there is no covenantee, [165 and the pretended reservation is not, indeed, to a stranger, nor yet to a privy. It is to a nonentity.

5. Is this bond available to the defendant as a license? The case of Sullivant v. Commissioners of Franklin County, 3 Ohio, 89, has been averted to. I am unable to see its application. In that case, Sullivant, who held the fee, had conveyed to the commissioners of the county, "on the express condition, and no other, that the jail, or prison-house, when built, shall be built on said lot." The jail has been built on the lot, and was used as such when the suit was brought The deed was found defective as a grant, because it had no subscribing witnesses. There were parties to the deed, an obligor and obligee, and the court held, that although the paper wanted the requisites of a deed, it had those of a written license to enter and occupy lands, and that a possession under a license was a good defense in ejectment.

6. A question arises here, connected with this matter, in either aspect; that is, whether the plaintiff does not stand before the court in the light of a purchaser *without notice*. Even if the estate in the town should be adjudged legal, yet the record on the commissioners' books alone is no legal notice to a subsequent purchaser. If the fact of the plaintiff signing the bond, as a witness, be relied upon, I reply that is but a circumstance, and all our experience is adverse, from the assumption that the witness is made acquainted with the contents of the paper witnessed. Such information is seldom communicated, and it would be impertinent to ask it. The witness observes the signature, or hears the acknowledgment of the party, and attests it, and recollects that fact when his attestation is again shown. The matters of the deed are never intrusted to his memory. If the plaintiff read, or was acquainted with the contents of the bond, that is a fact for the defendants to prove. There is no such evidence. Did he know of the logs laid when he purchased? There is no evidence of the fact. He resided out of the county always, until long after the date of the conveyance to himself.

7. If this bond is valid for any purpose, it could be only to those who inhabited the town of Wooster at its date. If any one 166] was capable of taking anything, it was only they, *and a majority of them alone could control. Here the corporation has intervened, embracing more territory and inhabitants than existed at the date of the bond; and the corporation agents seek to exercise the power of the majority of the old inhabitants, when perhaps, every one of those opposed their election. Besides, if

Sloane *v.* McConahy.

the corporation had power, it could only be within their limits, and this ground is admitted to be without the corporation.

GEO. JAMES, Esq., also submitted an elaborate argument for the plaintiff, which is too long for insertion in the reports.

AVERY and SILLIMAN, for defendant:

For the defendant it is contended:

1. That there is no legal grantee.

2. That the bond or article of agreement made by Beaver, Henry, and Larwell is not such a grant of the right as will bind the contracting parties, or those who claim under them.

As to the first point, it is not necessary for the defendant to contend, that there was in being at the date of the article of agreement such a legal grantee as could have taken a fee, nor do we contend there was any alienation of the fee in the land. But it was merely an appropriation or dedication of the use to the public —we contend that no grantee was necessary. In the case of the Town of Pawlet *v.* Clark and others, 9 Cranch, 292, the Supreme Court of the United States decide that no grantee is necessary to support an appropriation or dedication to public uses.

As to the second point, we do not contend that the commissioners of the county of Wayne, elected after the execution of the article of agreement, or the inhabitants of the town of Wooster, took an estate in fee in any part of the land through which the aqueduct passed, and we admit that if the right to the use could not be given, without such a grant as would convey the fee, the plaintiff is entitled to recover; unless the act done by Beaver, Henry, and Larwell, by executing the article of agreement, and by constructing the aqueduct, was such a license to the inhabitants of the town *to enter and repair as could not be counter- [167 manded or discharged, either by the parties to the agreement, or those claiming under them.

If no grantee is necessary to support an appropriation or dedication to public uses, it follows of course that the same requisites are not necessary to support such appropriation or dedication as are required in the conveyance of a fee. In the case of Gwynn and wife *v.* The City of Cincinnati, 3 Ohio, 25, this court recognizes the doctrine that ground for public uses may be appropriated or dedicated without the formalities required in the conveyance of the fee. The

153

familiar case of the appropriation of ground for a street or public highway, is one in which, although there is no particular grantee, and none of the modes necessary for the conveyance of the fee are observed, yet the public acquire a right to the enjoyment of the use, as much and as completely as if all the solemnities requisite in a deed for the conveyance of an estate of inheritance were observed, the grantee reserving everything not necessary for the enjoyment of the use.

It will be contended by the plaintiff that the cases cited from New York are decisive upon this question; but the court will observe that in most of those cases, *individuals* claimed the rights denied, and not the public generally, which, we contend, distinguishes this from those cases.

But we contend, at any rate, that the bond or article of agreement amounted to a license to enter and repair the aqueduct whenever the same should become necessary, doing as little damage to the soil as possible. By the agreed case, it appears that the natural course of the water was from the north into the town; and it will be admitted that neither Beaver, Henry, or Larwell, or any other person, could in any manner obstruct or divert its course. But for the better enjoyment of that right, a license is given to the inhabitants of the town to enter and repair, not the aqueduct originally laid by them, but which was done by the then proprietors of the town, and of the land on which the aqueduct was laid.

A license may be either in writing or in parol; and if resting in parol, and be part executed, it is not in the power of the person giving it to discharge and countermand it; and certainly so, if the license is in writing and partly executed. This point was adjudged in the case of Winter v. Brockwell, *8 East, 308; Crosby v. Wadsworth, 6 East, 602. We contend that the first construction of the aqueduct, under the agreement by Beaver, Henry, and Larwell, as one inducement by the commissioners to establish the seat of justice in Wooster, was such a part execution of the license as will inure to the benefit of the inhabitants of the town themselves. We do not rest our claim to part execution of the license on this ground alone. Under the order of the corporation, the defendant caused the logs to be taken up and repaired; and it appears from the case agreed, that these repairs were made by the defendant, without any objection having been made by the plaintiff.

It may be said that the inhabitants of the town acquired no right

of entry to repair, by the express terms of the bond or article of agreement; but we maintain that if the appropriation or dedication of the use can be supported, the right of entry to repair is incident to the grant for the enjoyment of the use.   Ponfrit *v.* Ricroft, 1 Saund. 323.   In the case of Sullivant's Heirs *v.* Commissioners of Franklin County, this court has decided, that, although the deed from Sullivant was not sufficient to convey the fee, yet that as the possession accompanied its execution, it was good as a license, and afforded a good defense in an action of ejectment.   If so, we maintain that there could be less doubt of it affording a good defense in an action of trespass.

As there can be no doubt of the intention of the parties to the bond or agreement, this court will, as we believe, protect the inhabitants of the town in the enjoyment of the privilege intended to be granted, unless such protection would be granted at the expense of established principles of law.

As the conveyance of the water into the town may have had great influence on the commissioners in fixing the seat of justice, and on those who afterward became purchasers of lots, if the license to enter, for the purpose of repairing, is not valid, a great fraud will be practiced on those who claim the right.   We contend that when a license, either in writing or by parol, is given and part executed, a court of equity will protect those for whose benefit it was given, in the enjoyment of it, by restraining the owner of the fee from doing *any act'to impair or destroy the right; and if so, the   [169 persons licensed, or those who claim under them, can not be considered ar trespassers.


By the COURT:

This bond is not a grant, but a covenant.   It contains none of the formalities which the wisdom of ages has settled as necessary to convey real estate.   The covenant against incumbrance is an accidental phraseology, borrowed from the usual term in a common law conveyance, and can not, upon any principle, be construed into a grant.   No acknowledgment appears upon the instrument; and this is made necessary by statute, in order to constitute a complete deed of conveyance.   Roads *v.* Symmes, 1 Ohio, 281; Lessee of Johnston *v.* Haines, 2 Ohio, 55.   But giving the conditions of this bond all the requisites of a grant, then the proprietor of the town granted, either to the commissioners of the county, or

the inhabitants of Wooster. If the legal right of entry is vested in the commissioners, the defendant can not justify the trespass. He has neither showed a license nor order from them, to enter for any purpose. Besides, the commissioners of Wayne were not in being at the date of the instrument; the grant would therefore be void. It is indispensable to the validity of a grant, that the grantee be capable of receiving it; that is, that he be a person in being at the time of the grant made. A grant to him or her who is to be the first child of T. S. or to his right heirs, he being living, is void. Shep. Touch. 235. The same principle will apply to the unincorporated inhabitants of the town of Wooster, as to their capacity to be grantees. The instrument is dated in 1811. The town of Wooster was incorporated in 1824. A grant to the inhabitants of Wooster, admitting they were capable in law to take, would only vest the estate in joint tenancy in those who were actually such at the date of the grant. The tenancy could not be made to extend to others who, subsequently, became inhabitants. Upon the death of the inhabitants *in esse*, at the date of the deed, the right would either be in abeyance, or revest in the grantors. But the inhabitants could not be grantees, and a deed executed to them would be void. The authorities to this point are *numerous and perfectly conclusive. 8 Johns. 301; 9 Johns. 73; 9 Mass. 419: Sugd. 388; Co. Lit. 3, *a*; 2 Com. Dig. 168. The inhabitants not being a corporate body, and being therefore incapable of taking an interest in land, by conveyance, at common law can not be *cestui que use*. Cruise, D, 413. If the county commissioners could be grantees, they could not be seized to the use of the inhabitants of Wooster. The facts and law arising upon them do not furnish a justification for the defendant. There must be a judgment for the plaintiff, according to the agreement of parties.